IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MONTANORE MINERALS CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>Easements and Rights of Way under, through and across those certain unpatented lode mining claims located in the NE 1/4 and the NW 1/4 of Section 15, Township 27 North, Range 31 West, Lincoln County, Montana, and identified as POPS 12, POPS 13, POPS 14 and POPS 15; ARNOLD BAKIE; OPTIMA, INC.; FRANK DUVAL; UNKNOWN OWNERS; and all other persons, unknown, claiming or who might claim any right, title, estate, or interest in or lien or encumbrance the unpatented lode mining claims described above or any cloud upon title thereto, whether such claim or possible claim be present or contingent,<br><br>Defendants. | CV 13–133–M–DLC<br><br><br>ORDER |

Before the Court are several motions.  For the reasons explained the Court

denies Plaintiff's motion for summary judgment, grants in part and denies in part

Plaintiff's motion for protective order and motion to deem answers admitted, and

denies Defendants' motion to require deposit.

## Background

Because the parties are familiar with the factual and procedural background of the case, it will only be repeated here as necessary to explain the Court's order.

Montanore Minerals Corporation ("Montanore") brought this diversity action in condemnation pursuant to Rule 71.1 of the Federal Rules of Civil Procedure and Montana Code Annotated § 70-30-101 to condemn easements and rights of way across certain unpatented lode mining claims in which Defendants claim an interest ("Subject Claims"). The Court granted Montanore's motion for a preliminary condemnation order and motion for preliminary injunction on April 29, 2014. To resolve the issue of just compensation, the Court has appointed a three-member Commission and scheduled a Commission hearing for April 8, 2015.

## I.    Motion for Summary Judgment

### Legal Standard

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## Discussion

Montanore moves for summary judgment on the issue of just compensation, requesting the Court to declare as a matter of law that the condemnation of the easements and rights of way through Defendants' unpatented mining claims does not diminish the value of those claims and that the Defendants are not entitled to any compensation. While the Court believes based on the current state of the record that the evidence of diminution in value is minimal, Montana law states that "just compensation is determined by equitable principles." *Alexander v. State Highway Comm'n*, 412 P.2d 414, 416 (Mont. 1966). Therefore, at this stage of these condemnation proceedings the Court cannot find as a matter of law that

Defendants are entitled to nothing for the taking of the easements and rights of way condemned here. Accordingly, the motion for summary judgment is denied, and the issue of just compensation will be resolved by the highly qualified Commission based on all of the evidence presented at the hearing on April 8, 2015.

More specifically, Montanore contends that Defendants have failed to produce expert testimony or evidence on loss in diminution in value of the Subject Claims resulting from the taking, and that absent evidence of the decrease in market value as a result of the taking – in the form of before and after appraisals – it is entitled to summary judgment and Defendants are not entitled to any compensation. Given the scant nature of Defendants' proof, the argument has some appeal, but is ultimately rejected for the reasons explained below.

Defendants do not actually contest Montanore's assertion that they lack evidence in the form of before and after appraisals speaking directly to fair market value of the Subject Claims. Instead, Defendants argue that an appraisal establishing the replacement cost for the Subject Claims should serve as evidence of what constitutes just compensation. While the Court does not reject the general proposition that replacement cost may be used to assess value in Montana condemnation proceedings, *see e.g. State Highway Comm'n v. Tubbs*, 411 P.2d

739, 743 (Mont. 1966), Defendants' theory for replacement value here must be rejected because it is contrary to the law and the facts.

Defendants' replacement cost theory is premised on the contentions that (1) they have a right of access to the adit, and (2) they own the adit. Both of these contentions are without merit.

Defendants base their claim of access to the adit on two equally meritless arguments: (1) the portal to the adit is on the Subject Claims rather than on Montanore's patented Johnstone Placer claim, and (2) even if the portal is on the Johnstone Placer, Defendants have an implied easement through the Johnstone Placer to access the adit's portal.

Defendants fail to provide evidence sufficient to create a genuine dispute about whether the portal to the adit is on the Johnstone Placer claim. On the other hand, Montanore has provided undisputed sworn testimony from multiple deponents establishing that the portal to the adit is on the Johnstone Placer.[1] Lynn Hagarty, district geologist for the United States Forest Service, testified that "[t]he

---

[1] Both parties have repeatedly violated Local Rule with respect to filing exhibits in the docket, making location of the parties' supporting citations difficult and frustrating for the Court. Local Rule 7.2, "Motion Exhibits," provides, "Exhibits must be identified and electronically filed so as to allow the Court, the parties, and the public to locate easily and refer unambiguously to a specific page of a specific exhibit. Use of a short descriptive name in filing the exhibit, e.g., 'Smith Aff.' or 'Range Rover Vehicle Registration,' in the docket and in the text of the brief is required." (emphasis added.) All future filings must comply with the Local Rules.

portal is located on the Johnstone Placer patented mining claim." (Doc. 103-3.)

Glen Cash, Sr., a land surveyor, testified that the "improvements" associated with

the portal to the adit "lie inside the Johnstone Placer." (Doc. 103-4 at 12.) Glenn

Dobbs, the Board chairman and chief executive officer of Mines Management,

also testified that "the portal is located on the Johnstone Placer claims." (Doc.

103-5 at 5.) Denver Winslow, Montanore's engineer, testified that his use of the

term "portal" refers to "[t]he entrance to the adit on the Johnstone Placer." (Doc.

94-4 at 4.) The only testimony by anyone possibly creating any dispute about this

is Defendant Frank Duval's testimony, who in answer to the question of whether

the portal to the adit was on the Johnstone Placer, merely responded, "I don't

know that." (Doc. 103-6 at 8.) Defendants maintain that "Montanore does not

know where exactly the 'portal' lies in relationship to the boundary of the

Johnstone Placer," and cite the Court to a snippet of Denver Winslow's testimony

about the placement of a survey point on the Johnstone Placer. (Doc. 94 at 3.) As

noted, Winslow testified unequivocally that the portal to the adit is on the

Johnstone Placer and Defendants provide no explanation of how this snippet of

testimony means something contrary.

Defendants also contend in their Statement of Disputed Facts[2] that whether the portal to the adit is on the Johnstone Placer "has never been admitted by Defendants." *Id.* This is incorrect. In Defendants' brief opposing Montanore's motion for a preliminary condemnation order, Defendants expressly declared that "[t]he portal for the adit . . . is on [Montanore]'s private property." (Doc. 29 at 15.) Even if judicial estoppel is not applicable against Defendants based on this prior admission, Defendants fail to provide sufficient evidence to create a genuine dispute. The undisputed fact is that the portal to the adit is located on Montanore's privately owned Johnstone Placer claim.

Defendants' alternative claim of legal access to the adit is based on its assertion that it is entitled to an implied easement across the Johnstone Placer to access the portal. Defendants premise this argument on the claim that "[u]nity of title formally existed between the Johnstone Placer and the Subject Claims by virtue of the expansive Noranda mining lease and easement," which, upon severance of the lease, gave rise to an easement by implication. (Doc. 95 at 28.)

Though creative, this argument must be rejected. The Noranda mining lease

---

[2] Defendants Statement of Disputed Facts does not comply with Local Rule, which requires the party opposing summary judgment to "set forth verbatim the moving party's Statement [of Undisputed Facts]" and signify only whether the fact is undisputed or disputed. L.R. 56.1(b). Again, all future filings must comply with the Local Rules.

conveyed to Noranda the right to use the Subject Claims for mining and activities

incident thereto. The lease did not create unity of title between the Subject Claims

and the Johnstone Placer because it could not. Defendants' predecessors, as the

owners of unpatented mining claims, did not own fee title to the land; an owner of

an unpatented mining claim owns only the right to use the claim for "prospecting,

mining or processing operations and uses reasonably incident thereto." 30 U.S.C.

§ 612(a). Fee title to land subject to an unpatented mining claim remains with the

United States. *Swanson v. Babbitt*, 3 F.3d 1348, 1350 (9th Cir. 1993). The

Noranda mining lease could not convey more than what was owned by the lessor

to the lessee, *Noyes v. Mantle*, 127 U.S. 348, 354 (1888), so it could not convey

title or create unity of title in Noranda because the lessor did not own title to the

land. It is also highly questionable whether Defendants, as the owners of an

unpatented mining claim, have standing to assert a right to an implied easement

across Montanore's private property. *See Precious Offerings Mineral Exchange,*

*Inc. v. McLain*, 194 P.3d 455, 457 (Colo. App. 2008).

Defendants do not attempt to fully explain their implied easement

theory–whether it is based on a theory of easement by necessity or easement by

existing use. But even assuming that Defendants have standing and that unity of

title was not a fundamental problem with the theory, more obvious problems arise

8

in addressing the question of whether such an asserted implied easement is warranted by either "strict necessity" or "apparent, continuous, and reasonably necessary use" that was intended to continue. *Yellowstone River, LLC v. Meriwether Land Fund I, LLC*, 264 P.3d 1065, 1077-78 (Mont. 2011). These additional hurdles to the creation of an implied easement also cannot be overcome. Defendants' implied easement theory is without merit. Defendants lack access to the adit because the portal is on Montanore's private property and there is no implied easement to cross this private property to access the portal.

Defendants' assertion that they own the adit is similarly meritless. Montanore's predecessor in interest, Noranda, constructed the adit. During the period of construction and for sometime afterward, Noranda paid Defendants' predecessor in interest, pursuant to a lease agreement, for the right to use the Subject Claims. When Noranda extinguished the lease, the portion of the adit that ran through Defendants' unpatented mining claims did not become the lessor's private property. Defendants never owned access to the adit and their rights as the holder of unpatented mining claims were limited to those associated with that "unique" property interest. *Best v. Humboldt Placer Min. Co.*, 371 U.S. 334, 335 (1963); 30 U.S.C. § 612(a). Upon expiration, the lease did not, and could not, transfer ownership of the adit to Defendants who lacked legal access to it and who

held only the limited property interest associated with unpatented mining claims. Accordingly, Defendants' theory that just compensation for this taking may be based on the replacement cost of constructing a new adit is fundamentally flawed because, as the saying goes, you can't lose what you ain't never had.[3]

Despite it appearing to the Court that Defendants have largely, if not entirely, premised their claim for just compensation on a theory of replacement cost based on the flawed premise that they own or have access to the adit, the Court nevertheless denies Montanore's motion for summary judgment. Montana law is clear that "just compensation is determined by equitable principles." *Alexander v. State Highway Comm'n*, 412 P.2d 414, 416 (Mont. 1966). The measure of just compensation "varies with the facts." *Id.* "[T]he value of property cannot be measured solely by formula or artificial rule," and assigning value in eminent domain cases may "require[] consideration of factors beyond the usually acceptable practices and methods employed in determining fair market value." *Id.* Moreover, "mining claims . . . can and do have market values based on the speculative character of the property." *State Highway Comm'n v. Antonioli*, 401 P.2d 563, 565 (Mont. 1965).

This does not mean that Defendants will be allowed to present testimony

---

[3] Muddy Waters, *You Can't Lose What You Ain't Never Had*, (Chess Records 1964).

and expert opinions supporting their flawed premise of adit ownership, or "based upon unsupported assumption, conjecture or speculation." *Id.* Defendants will have the burden of proving the amount of just compensation, *State v. Donnes*, 711 P.2d 805, 808 (Mont. 1985), and equity may ultimately demand that little or nothing be awarded because little or nothing was proven to have been taken, but the Court is not prepared to rule that Defendants are entitled to nothing for the taking absent a full airing of all the admissible evidence and the benefit of the decision from the three Commissioners, who are experts on this subject. Montanore's motion for summary judgment is therefore denied.

## II. Motion for Protective Order

Montanore seeks a protective order precluding discovery on a wide variety of topics. Defendants oppose the motion in part. The Court will address each topic in turn.

### A. Adit Construction Cost

Montanore contends that information about its adit construction costs is irrelevant to a determination of just compensation for the taking of Defendants' unpatented mining claims. The Court agrees. Accordingly, the motion for protective order as to this category of information will be granted.

Defendants assert that information about Montanore's adit construction

costs is required to allow its experts to testify about the value of the adit. This argument presumes that the adit was an attribute of the unpatented mining claims prior to these condemnation proceedings and that Defendants are entitled to compensation for loss of the adit and/or loss of access to the adit. As explained above, this contention is without merit. Defendants never owned the adit or had any legal access to it. Accordingly, this information is not "relevant to any party's claim or defense," Fed.R.Civ.P. 26(b)(1), and Montanore is entitled to a protective order as to this category of information.

**B.      Permitting Information**

Defendants contend that information about the permits required for Montanore's mining operation are relevant to the issue of just compensation because such information would shed light on "the differences between surface exploration and development, and underground exploration and development." (Doc. 93 at 11.) Again, the Court understands that this argument is based on the flawed premise that Defendants own or have access to the adit. Because Defendants do not own or have access to the adit, this information is irrelevant to the issue of just compensation and Montanore is entitled to a protective order with respect to this category of information.

**C.      Financial Information**

Defendants contend that information about Montanore's financial circumstances is relevant "because they are legitimately concerned about [Montanore's] ability to pay a judgment and the costs of this case." *Id.* at 8. Defendants' purported worry about Montanore's ability to pay a judgment in this case is irrelevant to a determination of what Defendants are owed in just compensation for the taking of easements and rights of way through their unpatented mining claims. As support for their concern about Montanore's financial health, Defendants cite a newspaper article from *The Western News,* a Libby weekly, in which a University of Montana professor opines that one of Montanore's recent financing efforts was "risky." (Doc. 93-3 at 1.) The Court puts little stock in such evidence, and notes that in another filing Defendants assert that Montanore "does appear to have more than $3,000,000" in cash. (Doc. 85 at 9.) Information about Montanore's financial situation is irrelevant to the issue of just compensation, and Defendants' purported worry about it appears to rest on nothing more than speculation. Accordingly, Montanore is entitled to a protective order as to this category of information.

### D.    Geologic Information

Montanore seeks a protective order precluding discovery into "geology pertaining to [its] mining project." (Doc. 86 at 4.) Montanore insists that it has

produced all information requested about "geologic information pertaining to [the] Subject Claims." *Id.* Defendants do not expressly dispute Montanore's assertion that it has properly disclosed geologic information about the Subject Claims. Indeed, Defendants make clear that Montanore has disclosed information about its expert who will opine about "the geology 'in and around the Subject Claims.'" (Doc. 93 at 12.) This is likely all that is relevant in terms of geologic information, and to the extent that Defendants seek information about the geology of Montanore's mining project for the purpose of establishing the project's value to Montanore, the information is irrelevant, as has been explained before, and not discoverable.

However, geologic information pertaining to Montanore's mining project is not necessarily wholly irrelevant to the value of the Subject Claims. As Defendants have argued, the formations underlying the Subject Claims and Montanore's mining project are geologically complex. Thus, to the extent that Defendants seek this information for the purpose of understanding the geology of the area and establishing the mineral value of the Subject Claims, then the information is potentially relevant. Montanore's motion for a protective order as to this category of information is based solely on relevancy. On this record, what constitutes "irrelevant geologic data" is not clear to the Court. (Doc. 104 at 8.)

Because information about the geology of Montanore's mining project may lead to the discovery of admissible evidence, it is discoverable absent some other valid reason for its protection. Accordingly, Montanore's motion for a protective order as to this category of information is denied.

### E. Unopposed Categories

Montanore seeks a protective order precluding discovery into the following additional categories of information: (1) the value of Montanore's patented mining claims; (2) the history and management of Montanore's mining project; (3) the corporate structure of Montanore and related companies; (4) financial information for companies related to Montanore; and (5) estimates of future expenditures on the Montanore project. Defendants assert no opposition to a protective order as to these categories of information. Montanore has established that this information is irrelevant and thus has shown good cause for a protective order. A protective order as to these categories of information is granted.

### III. Motion to Deem Answers Admitted

Montanore served requests for admission on Defendants asking that Defendants (1) "admit that no affidavit of assessment was filed with the office of Lincoln County Clerk and Recorder in 2005 for the [Subject] Claims;" (2) "admit that no notice of intent to hold was filed with the office of the Lincoln County

Clerk and Recorder in 2005 for the [Subject] Claims;" (3) "admit that no report of work was filed with the office of the Lincoln County Clerk and Recorder in 2005 for the [Subject] Claims;" and (4) "admit that no annual maintenance fees were paid for the Claims to cover the 2005 assessment year." (Doc. 89-1 at 3-5.) Defendants responded to all of these requests for admission with the following identical answer:

> Objection. This request for admission is in violation of the Court's Order dated April, 29, 2014 (Doc. 46) and the law of the case doctrine, specifically subpart (5) of the Order ("Montanore's motion to determine claims (Doc. 32) is DENIED"). This request also is outside the scope of permissible discovery relative to the claims and defenses alleged by the parties in this matter. Without waiving these objections, I cannot admit or deny this request for admission because I did not own the claims in 2005. To the best of my knowledge, all requisite filings have been made and the Claims are valid.

*Id.* Despite Montanore's contention that this same response to these four requests is insufficient, Defendants have not supplemented their responses. The Court declines to deem the answers admitted, but holds that the answers are insufficient for failure to comply with Fed.R.Civ.P. 36(a)(4).

The Court agrees with Montanore that Defendants' objections to the requests for admission are without merit. The Court's Order of April 29, 2014 did not declare that Defendants claims are valid as a matter of law, and more importantly, did not declare that the issue of whether the appropriate paper work

16

was filed with the County in 2005 is irrelevant to a determination of just compensation. If the appropriate and necessary paperwork required to maintain the Subject Claims was not filed in 2005, this would undoubtedly affect the fair market value of the Subject Claims. While this Court will not endeavor to resolve the question of the validity of the claims, as this determination is squarely before the state court, any potential defect in title to the claims is relevant to a determination of just compensation. Accordingly, Defendants' objection that the requests are in violation of the Court's Order of April 29, 2014 is without merit. The requests are also not outside the scope of permissible discovery because potential defects in the title to the Subject Claims are relevant to the fair market value of the claims. Defendants' objections to the requests for admission are therefore overruled.

The Court also agrees with Montanore that Defendants' answers to the requests are deficient because they assert lack of sufficient knowledge without stating that a reasonable inquiry has been made. Fed.R.Civ.P. 36(a)(4). Accordingly, the Court directs Defendants to supplement their answers to comply with the requirements of Rule 36(a)(4).

The Court declines Montanore's request to deem the answers admitted. Montanore misconstrues the nature of its requests when it asserts that the

"requests for admission sought confirmation of information that is readily obtained through the Clerk & Recorder's Office of Lincoln County, Montana." (Doc. 89 at 14.) The requests do not ask Defendants to admit that the Clerk & Recorder's Office has no record of the described documents for the Subject Claims for the year 2005. Rather, the requests ask Defendants to admit that these documents were not, in fact, filed by the owner of the Subject Claims. Because Defendants did not own the Subject Claims in 2005, Defendants may be unable, even after reasonable inquiry, to determine whether the described documents were actually filed with the County in 2005. Montanore's motion is therefore granted in part and denied in part. Defendants must supplement their answers to comply with Rule 34(a), and if Defendants claim lack of sufficient knowledge to answer, reasonable inquiry must nevertheless be made.

## IV. Motion to Require Deposit

Defendants move to require a deposit in the amount of $3 million, or in the alternative, to dissolve the injunction. Defendants contend that a deposit is required pursuant to Montana Code Annotated § 70-30-311(1), because Montanore has obtained a preliminary injunction granting it an immediate right of possession of the easements and rights of way. Defendants premise their request for a "minimum" of a $3 million deposit on their purported worry that Montanore

18

may lack the cash necessary to pay the ultimate judgment in this case, the fact that their statement of claim sought $10 million in just compensation for the taking, and "the possibility that the award may very well exceed this amount." (Doc. 85 at 10.) For the reasons explained, the Court denies the motion.

First, Montana substantive law and Federal procedural law do not require a deposit simply because the Court has granted Montanore's motion for a preliminary injunction. Montanore's current right of possession of the easements and rights of way stems from a balancing of the preliminary injunction factors. It does not stem from Montana's eminent domain statutes. *See* Order of April 29, 2014 (Doc. 46 at 13-15.) Second, as the Court has already noted in its Order of August 12, 2014, "the amount of any such deposit, and when such deposit should be made [] are both matters within the discretion of the Court." (Doc. 58 at 7.) Finally, and most importantly, Defendants provide the Court with no sound basis to grant their excessive request for a deposit, which ostensibly represents an estimated loss amount for the taking of certain easements and rights of way through three unproven and unpatented mining claims.

In the absence of any reasonable basis to require such an amount for deposit, the Court will not order Montanore to make a deposit. In Defendants' Statement of Claim, it was clear that the basis for the $10 million claim was that

the ore body that Montanore seeks to develop "has exceptional value to [Montanore]" and "[a]ccess through the Subject Claims is currently the only feasible access to the ore body." (Doc. 47 at 3.) Of course, just compensation, as has been admitted by both parties, is not based on the value of the condemned property to the condemnor, but is measured by the value of the condemned property and the decrease in market value of the remainder that results from the taking. MPI2D 5.11 (2003) Condemnation – Easement (Fair Market Value); *K&R Partnership v. City of Whitefish*, 189 P.3d 593, 602-603 (Mont. 2008). Thus, the $10 million figure was not representative of an estimate of the amount potentially owed for the taking. Defendants' current request for a $3 million deposit is equally tenuous, since it is based on (1) Defendants' purported worry about Montanore's ability to pay a judgment, and (2) what Defendants believe Montanore has available in cash. These reasons are entirely divorced from any facts establishing what an appropriate amount of compensation may be.

Based on the current state of the record, and the positions of the parties, the range of claimed compensation is between zero and $10 million. The Court will not require a deposit of an arbitrary sum. Instead, under these circumstances, the Court will exercise its discretion under the statute to make a determination as to an appropriate amount for a deposit based on "the amount assessed . . . by the

commissioners." Mont. Code Ann. § 70-30-311; *see also* Fed.R.Civ.P. 65(c);

*Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)("Rule 65(c) invests the

district court with discretion as to the amount of security required, *if*

*any*."(emphasis in original)).  Defendants' motion to require a deposit is denied.

The Court also denies Defendants' alternative request to dissolve the

injunction.  As explained in the Court's Order of April 29, 2014, the factors for

granting a preliminary injunction weigh in favor of the injunction.  The situation

has not changed in the interim.  Because Defendants provide no sound basis for a

deposit, the Court will not require one at this time and the injunction shall remain

in place.

IT IS ORDERED that:

(1) Plaintiff's motion for summary judgment (Doc. 75) is DENIED.

(2) Plaintiff's motion for protective order (Doc. 83) is GRANTED IN PART

AND DENIED IN PART.

(3) Plaintiff's motion to deem answers admitted (Doc. 88) is GRANTED IN

PART AND DENIED IN PART.

(4) Defendants' motion to require deposit (Doc. 82) is DENIED.

Dated this 25th day of February 2015.

Dana L. Christensen, Chief District Judge
United States District Court