IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



**FILED**

JUL 0 1 2020

Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| MONTANORE MINERALS CORP., | CV 13–133–M–DLC |
| Plaintiff, | |
| vs. | |
| Easements and Rights of Way under, through and across those certain unpatented lode mining claims located in the NE1/4 and the NW1/4 of Section 15, Township 27 North, Range 31 West, Lincoln County, Montana, and identified as POPS 12, POPS 13, POPS 14 and POPS 15; ESTATE OF ARNOLD BAKIE; OPTIMA, INC.; FRANK DUVAL; UNKNOWN OWNERS; and all other persons, unknown, claiming or who might claim any right, title, estate, or interest in or lien or encumbrance the unpatented lode mining claims described above or any cloud upon title thereto, whether such claim or possible claim be present or contingent, | ORDER |
| Defendants. | |

Before the Court is Defendants' Renewed Rule 54 Motion for Attorneys'

Fees and Costs.  (Doc. 290.)  Plaintiff Montanore Minerals Corp. ("Montanore")

opposes the renewed motion as it did in 2017 when Defendants Estate of Arnold

Bakie,[1] Optima, Inc., and Frank Duval (collectively, "Defendants") filed their original motion (*see* Docs. 259; 260; 263). (Doc. 295.) Because the instant motion comes before the Court on a unique procedural footing, the Court heard argument on June 12, 2020 to clarify the issues presented. For the following reasons, the motion is denied.

## BACKGROUND

Although it has been recited *ad nauseum* throughout this dispute's seven-year tenure in federal court and its twelve-year parallel journey through Montana's courts, the Court will lay the factual and procedural landscape again as necessary to put this ruling in context.

In 2007, Montanore[2] sued Defendants in state court, challenging the validity of several unpatented mining claims (the "Subject Claims") near the boundary of the Cabinet Mountain Wilderness. *Mines Mgmt., Inc. v. Fus*, 453 P.3d 371, 373 (Mont. 2019). By invalidating Defendants' purported interest in the Subject Claims, Montanore sought unencumbered access to its patented mining claims on the Montanore Project, "a multibillion-dollar copper and silver deposit within the

---

[1] Arnold Bakie died in 2018, and this Court subsequently granted Defendants' motion to substitute the Estate of Arnold Bakie for him. (Docs. 288; 293.)

[2] Montanore is a wholly owned subsidiary of Newhi, Inc., itself a wholly owned subsidiary of Mines Management, Inc. Noranda Minerals Corporation owned the Montanore Project until 2006, when Mines Management, Inc. acquired Noranda and changed Noranda's name to Montanore Minerals Corp. *Mines Mgmt., Inc. v. Fus*, 453 P.3d 371, 373 n.1 (Mont. 2019). Because of the way Montanore appeared in the state action, the Montana Supreme Court differentiated between these entities. *Id.* However, the distinction is irrelevant here.

boundary of the Cabinet Mountain Wilderness." *Id.* at 373.  Defendants

counterclaimed, seeking a declaration of claim validity and superiority and alleging

that Montanore trespassed across the Subject Claims. *Id.* at 375.  In March 2013,

the state trial court granted Defendants' motion for partial summary judgment and

ruled, *inter alia*, that the Subject Claims were valid. *Id.* at 375.  Because the ruling

was not a final order, Montanore did not immediately appeal to the Montana

Supreme Court. *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1164 (9th

Cir. 2017).

Then, with the state action still pending and the adverse interlocutory order

in tow, Montanore filed the present case in federal court in June 2013.  (Doc. 1.)

Pursuant to Federal Rule of Civil Procedure 71.1, Montanore sought to condemn

easements and rights of way through the Subject Claims to reach the Montanore

Project. *Mines Mgmt., Inc.*, 453 P.3d at 373.  To that end, Montanore eventually

moved this Court to determine the validity of the Subject Claims.  (Doc. 32.)  In

other words, Montanore asked this Court to make a finding directly contrary to the

ruling previously made by the state court.

Defendants moved the Court to dismiss or stay the federal proceedings while

the state court action remained pending.  (Docs. 23; 24.)  Although the Court

agreed that abstention principles counseled in favor of denying Montanore's

motion regarding claim validity, it rejected Defendants' argument that the same

abstention principles required the Court to stay the federal action in its entirety. (Doc. 46 at 18–23.) Instead, it granted Montanore's motion for a preliminary condemnation order (Doc. 46), and, pursuant to Federal Rule of Civil Procedure 71.1(h)(2), appointed three commissioners to determine the compensation due to Defendants as condemnees (Doc. 71). After a three-day hearing in 2015, the commissioners issued a report outlining their determination that "the just compensation for the taking is $0." (Doc. 226 at 4.) The Court adopted the report, granted judgment as a matter of law in favor of Montanore, and issued a final order of condemnation on September 8, 2015. (Docs. 240; 246.)

On appeal to the Ninth Circuit, Defendants' argument that abstention principles applied to the case in its entirety won the day. Specifically, the court determined that *Colorado River*[3] abstention applied to Montanore's federal case, and concluded that this Court abused its discretion when it denied Defendants' motion to stay in deference to the state court proceedings. *Montanore Minerals Corp.*, 867 F.3d at 1163–64. Without addressing the merits of the condemnation action, the court "[reversed] the district court's condemnation order and [remanded] for the district court to stay the federal proceedings."[4] *Id.* at 1171.

---

[3] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).
[4] In addition, the panel affirmed the Court's denial of Montanore's motion to determine claim validity. *Montanore Minerals Corp.*, 867 F.3d at 1171.

On the heels of the Ninth Circuit decision, Defendants filed their first motion for attorneys' fees and costs in August 2017. (Doc. 259.) Based on the Ninth Circuit's reversal, Defendants characterized themselves as the "prevailing condemnee," because the "court [did] not allow condemnation." (*Id.* at 2.) The Court denied the motion, pointing to the Ninth Circuit's instructions to enter a stay rather than a dismissal.[5] (Doc. 275.) The Court explained that Defendants' motion was "subject to refiling should the state forum turn out to be inadequate." (*Id.* at 2.)

So, the state case proceeded unfettered by the parallel federal action. In 2018, after two days of trial testimony, the state district court advised the parties that damages remained the only issue for the jury to consider and instructed the jury that Montanore was liable for trespass. *Mines Mgmt., Inc.*, 453 P.3d at 376. The jury awarded damages in favor of Defendants of more than three million dollars. *Id.*

But, in November 2019, the Montana Supreme Court upended the jury's verdict, ruling that the trial court erred at the outset by granting summary judgment to Defendants on the issue of the Subject Claims' validity. *Id.* at 378. For the same reason, then, the court erred when it instructed the jury on Montanore's trespass liability. *Id.* Accordingly, the Court reversed and remanded, instructing

_____

[5] As directed by the Ninth Circuit, the Court stayed this case on October 30, 2017. (Doc. 273.)

the trial court to vacate its 2013 order and grant Montanore's motion to find the Subject Claims invalid. *Id.*

On March 19, 2020, pursuant to the Montana Supreme Court's instructions, the state trial court vacated its 2013 order and entered judgment in favor of Montanore on all claims. Amended Judgment, *Mines Mgmt., Inc. v. Fus*, No. DV-07-248 (19th Dist. Ct. Lincoln Cty., Mont. 2020). The court also awarded Montanore costs. *Id.*

After the state court action terminated with judgment in favor of Montanore, Defendants returned to this Court. Because the parallel state action had resolved all pending issues, Defendants moved to dismiss the federal action with prejudice. (Doc. 289.) Montanore did not oppose the motion, and the Court granted it. (Docs. 289; 294.) Then, Defendants filed the instant motion, renewing their 2017 request for fees and costs, again insisting that they prevailed. (Docs. 290; 291.) Montanore opposes the motion. (Doc. 295.)

# DISCUSSION

Defendants move for costs[6] and attorney's fees pursuant to Federal Rule of

Civil Procedure 54(d)(2).  (Doc. 290.)  Rule 54(d)(2) "creates a procedure but not a

right" to recover an award of attorney's fees and "related nontaxable expenses."

*MRO Comms., Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999);

Fed. R. Civ. P. 54(d)(2)(A).  "[T]he rule does not provide a rule of decision[.]

---

[6] The Court would characterize some of the expenses Defendants request as Rule 52(d)(1) "costs," rather than "related nontaxable expenses" under Rule 52(d)(2).  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) (stating that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)); *see also* 28 U.S.C. § 1920 (defining costs as "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts . . . ; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of . . . copies . . . ; (5) Docket fees . . . ; [and] (6) Compensation of court appointed experts"); *and see* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2666 (4th ed.) (describing the difference between "costs," "fees," and "expenses" under Rule 54).

This distinction presents an "intriguing choice of law problem," as articulated by the Third Circuit:

> Where there is a statutory provision shifting attorneys' fees and costs in a state statute creating the plaintiff's cause of action, a federal court exercising diversity or supplemental jurisdiction over that claim should, under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938), apply the state provision shifting fees and costs in the absence of a controlling federal statute, rule, or policy. . . . On the other hand, under *Hanna v. Plummer,* 380 U.S. 460 (1965), where there is a valid applicable Federal Rule of Civil Procedure, it is to be applied by a federal court even where the plaintiff's claim is based on state law.

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1223 (3d Cir. 1995).  The parties do not brief the issue as to as to whether federal or state law should ultimately control Defendants' application for costs under § 1920.  But, because the Court reaches the same result as to the threshold issue— whether Defendants prevailed—under both federal and state law, the choice of law problem identified in *Abrams* is premature and unnecessary for the Court to resolve *sua sponte. See also Stender v. Archstone-Smith Operating Trust*, 958 F.3d 938 (10th Cir. 2020) (explaining the analysis, after a prevailing party is identified, to determine whether a Federal Rule of Procedure prevails over state law diversity cases).

Rather, it and the accompanying advisory committee comment recognize that there must be another source of authority for such an award." *MRO Comms., Inc.*, 197 F.3d at 1281 (quoting *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224 (3d Cir. 1995)).  Where, as here, a federal court "exercis[es] its subject matter jurisdiction over a state law claim, so long as 'state law does not run counter to a valid federal statute or rule of court[,] . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'"  *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975)).

In this diversity action, the parties agree that that Montana Code Annotated § 70–30–305(2) ("the Statute") provides the source of authority for the award of fees and expenses Defendants seek, but Montanore challenges Defendants' characterization of themselves as the prevailing party.  (Docs. 291 at 6; 295 at 9.) The Statute governs "[t]he determination of who is the prevailing party in a condemnation case," and provides that, "[i]n the event of litigation, and when the condemnee prevails [] by the court not allowing condemnation[,] . . . the court shall award necessary expenses of litigation to condemnee."  *Wohl v. City of Missoula*, 339 P.3d 58, 62 (Mont. 2014).

Because this case terminated without an order of condemnation, Defendants argue that they are the prevailing condemnee under the Statute's plain language.

However, a question that is usually straightforward and readily defined by law is complicated by the tangled procedural path this thirteen-year, multi-court dispute took to resolution. For example, and as already noted, *see supra* note 6, the unique procedural footing of this case presents a potential choice of law problem as it relates to Defendants' costs request. But, because the Court reaches the same conclusion under state and federal law on the preliminary prevailing party question, *infra*, it declines to dive down an unbriefed, premature, and advisory rabbit hole.[7]

The question presented here, as already stated, is whether Defendants prevailed. By Defendants' estimation, two courts have "not allow[ed]" condemnation pursuant to the Statute, thereby rendering them the prevailing party and entitling them to necessary expenses of litigation. First, when the Ninth Circuit reversed this Court's condemnation order on abstention grounds, Defendants say it also decided that "condemnation was not warranted"—i.e., the court "did not "allow[] condemnation." (Doc. 291 at 7.) Then, when this Court dismissed the matter with prejudice, Defendants argue, again, that condemnation was "not allow[ed]" within the meaning of the Statute. (Doc. 296 at 4.)

---

[7] For instance, if the Court determined as a threshold matter that Defendants prevailed, the question would move to whether the Statute, as it relates to costs, impermissibly conflicts with Federal Rule of Civil Procedure 52(d)(1) under the principles of *Hanna v. Plumer*, *see supra* n.6, and *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S 393 (2010).

So, whether Defendants prevailed hinges on the Court's determination of: (1) the effect of the Ninth Circuit's 2017 opinion; and (2) the effect of the Court's 2020 order dismissing this case with prejudice.  For the following reasons, neither the Ninth Circuit's opinion nor the Court's dismissal order reasonably leads to a conclusion that Defendants prevailed.

I.    **While Defendants secured a favorable interim result on *Colorado River* grounds, the resulting stay did not operate to materially alter the parties' legal relationship.**

Conceding that the Ninth Circuit never reached the merits of Montanore's condemnation action (Doc. 296 at 3–4), Defendants nevertheless argue that, "[a]pplying abstention principles, [the appellate court] unequivocally reversed this Court's condemnation determination and therefore, condemnation was not warranted" (Doc. 291 at 7).  In their instant motion, Defendants fail to point to any authority to support the proposition that reversal on non-substantive grounds means they prevail, and indeed they seemed to retreat from this argument at the hearing.  (*See* Hr'g Tr. 7:18–7:25 (stating that "[i]t's somewhat of a creative argument, but that argument was more relevant to our first filing of the motion [for attorney's fees and expenses]").)  Still, Defendants have not formally abandoned this theory, and indeed advanced it in their brief, so the Court will not ignore it. (Doc. 291.)  Because the Defendants relied on federal law for this argument in their original brief (*see* Doc. 260 at 7), so too will the Court.

Similar to the Statute here, which awards prevailing condemnees the expense of defending condemnation suits, 42 U.S.C. § 1988 awards attorney's fees to prevailing defendants in § 1983 civil rights actions. *E.g.*, *Citizens for Free Speech, LLC v. Cty. of Alameda*, 953 F.3d 655, 658 (2020). Distinct from the Statute's requisites, § 1988 conditions a prevailing defendant's award on a court's finding the action "frivolous, unreasonable, or without foundation." *Id.* That distinction aside, though, the first part of the fee-shifting inquiry is the same— whether the defendant is a prevailing party. *Id.*; *see also CRST Van Expedited v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) (explaining that, in a Title VII suit, the first step in the fee-shifting analysis is determining whether the defendant has prevailed).

The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties," *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989), marked by "judicial imprimatur," *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001) (emphasis in original). Until recently in the Ninth Circuit, dismissal on abstention grounds failed to qualify as the requisite "material alteration of the legal relationship," because "abstention concerns the exercise of jurisdiction [and] makes no comment on the merits of [a] case[.]"

*Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006).[8]  In other words, under

*Elwood*, Defendants' concession that the Ninth Circuit never reached the merits

likely would have been fatal to their prevailing party argument.

But, in *CRST Van Expedited*, the Supreme Court held that a defendant does

not need to obtain a judgment on the merits in order to be a "prevailing party."

136 S. Ct. 1642, 1651.  The Court observed that "[p]laintiffs and defendants come

to court with different objectives.  A plaintiff seeks a material alteration in the legal

relationship between the parties.  A defendant seeks to prevent this alteration to the

extent it is in the plaintiff's favor." *Id.*  Therefore, even when a defendant does not

obtain the "judicial *imprimatur*" of a substantively grounded judgment, it "fulfill[s]

its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of

the precise reason for the court's decision." *Id.*  Still, the Court did not abandon

the "material alteration" test; it simply clarified that "the ultimate decision whether

---

[8] The court in *Elwood* abstained from exercising federal jurisdiction based on principles set out in *Younger v. Harris*, 401 U.S. 37 (1971).  As previously noted, *Colorado River* supplies the abstention principles at play in this case.  For purposes of the issue presented here, though, the distinction between *Younger* and *Colorado River* abstention is immaterial.  Both frameworks fall within "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction[,] an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it[.]" *Colo. River Water Conservation Dist.*, 424 U.S. at 813 (citation omitted).  That is, under either category of the abstention doctrine, a federal court "abdicat[es] . . . the obligation to decide" a case properly before it "where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *See id.*

- 12 -

to award fees does not distinguish between merits-based and non-merits-based judgments." *Id.*

Following *CRST Van Expedited*, the Ninth Circuit overruled *Elwood*, noting that its ruling was consistent with the rule that a defendant may be the "prevailing party" upon dismissal for lack of jurisdiction. *Citizens for Free Speech, LLC*, 953 F.3d at 659 (citing *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 (9th Cir. 2017)).

However, the court was careful "not to say that a[n] [abstention]-based dismissal will always materially alter the legal relationship between parties." *Citizens for Free Speech, LLC*, 953 F.3d at 659.  For example, and relevant here, when a claim is stayed "pending resolution of a state-law claim, the parties' legal relationship is probably *not* altered because the plaintiff can return to the federal forum after completion of the parallel proceedings." *Id.* (emphasis added); *see also Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009) (explaining that a "defendant is a prevailing party following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court").  In other words, whether the judicial *imprimatur* is merits-based or not, the "material alteration" must endure. *See Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013) (explaining that a § 1988 plaintiff who succeeds at the preliminary injunction stage but eventually loses on the merits is not a

prevailing party, because she secures only an "ephemeral" victory and gains no "enduring" change in the legal relationship).

Here, the Court is unconvinced that the abstention-based reversal of its condemnation order materially altered the parties' legal relationship. The Ninth Circuit's opinion did not foreclose Montanore's return to the federal forum after the completion of the parallel proceedings. To the contrary, the appellate court explicitly "direct[ed] [this Court] to enter a stay, rather than a dismissal so that the federal forum will remain open if for some unexpected reason the state forum turns out to be inadequate." *Montanore Minerals Corp.*, 867 F.3d at 1170 (citation, internal quotation marks, and original alterations omitted). Had the unexpected come to pass, Montanore could have returned to this Court to continue to litigate its condemnation suit. Moreover, had Montanore ultimately succeeded on the merits, delaying the federal case would have been an "ephemeral" victory to Defendants, to be later swallowed by an "enduring" change in the parties' legal relationship. *See Higher Taste, Inc.*, 717 F.3d at 717.

The Court's analysis remains the same after reviewing Defendants' argument in their original motion for expenses and fees. (Docs. 259; 260.) There, Defendants contended that the Ninth Circuit's instruction to stay constituted a final judgment, because "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any

- 14 -

substantive part of the case, whether it stays or dismisses." (Doc. 260 at 6 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).) Pointing to dicta from *Moses*, Defendants went on to say that the Ninth Circuit's instruction to stay was "as much a refusal to exercise federal jurisdiction as a dismissal." (*Id.*)

In the Court's view, Defendants misapply the *Moses* Court's discussion of the final judgment rule to the issue presented here. In *Moses*, in the context of discussing whether a stay order is final for appealability purposes, the Court explained that whether a case is dismissed or stayed on *Colorado River* grounds, no genuine difference exists because in either case the door to the federal forum remains open. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. Indeed, "[i]t is highly questionable whether [the] Court would have approved a dismissal of a federal suit in *Colorado River* (or in any of the abstention cases[]), if the federal courts did not remain open to a dismissed plaintiff who later demonstrated the inadequacy of the state forum." *Id.* In other words, while the *Moses* Court may have effectively collapsed the distinction between a *Colorado River* stay and a *Colorado River* dismissal, it did nothing to shut the federal door. *See Citizens for Free Speech, LLC*, 953 F.3d at 659. So, although a stay "is as much a refusal to exercise federal jurisdiction as a dismissal" for purposes of appealability, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, in either event "the parties' legal relationship is probably *not*

- 15 -

altered because the plaintiff can return to the federal forum after completion of the parallel proceedings," *Citizens for Free Speech, LLC*, 953 F.3d at 659.

In sum, although Defendants secured interim success by obtaining a stay while the state action remained live, the Court cannot agree that the delay amounted to Defendants fulfilling their primary objective of rebuffing Montanore's condemnation challenge. *See CRST Van Expedited*, 136 S. Ct. at 1651. Accordingly, to the extent Defendants have not abandoned it, the Court rejects the argument that they attained "prevailing party" status under federal law by way of the Ninth Circuit's reversal on *Colorado River* grounds.

The Court turns, then, to whether Defendants prevailed when this case was dismissed with prejudice.

## II. With this procedural background and under Montana law, finding that Defendants prevailed would be absurd.

In Montana, whether an award of litigation expenses is warranted and "[t]he determination of who is the prevailing party in a condemnation case is governed by [the Statute]." *Wohl*, 339 P.3d at 62 (Mont. 2014). Under the Statute, a condemnee prevails by "the court not allowing condemnation." Mont. Code Ann. § 70–30–305(2).[9]

---

[9] In full, the Statute provides:

> In the event of litigation and when the condemnee prevails *either* by the court not allowing condemnation *or* by the condemnee receiving an award in excess of the final written offer of the condemnor that was rejected pursuant to the facts

At the hearing, Defendants argued that under Montana law, the voluntary dismissal of this case with prejudice constituted a final judgment on the merits, thereby entitling them to litigation expenses.  But, the question before the Court is not whether its dismissal order constitutes a final judgment for res judicata purposes.  *See, e.g., Touris v. Flathead Cty.*, 258 P.3d 1, 4 (Mont. 2011) (stating that voluntary dismissal of an action with prejudice constitutes a final judgment on the merits); *but see City of Missoula v. Mountain Water Co.*, 378 P.3d 1113, 1126 (Mont. 2016) (adopting a "unique treatment" of issue preclusion questions in condemnation proceedings).  Rather, the question is whether under the Statute, the Court did "not allow[] condemnation," making Defendants the prevailing party.

As a preliminary matter, and because Defendants rely on the Court's order to establish their prevailing party status, the Court emphasizes that lack of jurisdiction formed the basis for dismissal here, not the impropriety of condemnation on the merits.  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*,

---

necessary in 70–30–111(1)(d)[, Mont. Code Ann.,] the court shall award necessary expenses of litigation to the condemnee.

Mont. Code Ann. § 70–30–305(2) (emphasis added).  In 2013, the Montana legislature added the clause at issue here: ". . . either by the court not allowing condemnation or . . . ."  Mont. Code Ann. § 70–30–305(2), Mont. Laws ch. 371 (Apr. 30, 2013).  The parties do not discuss the clause's relative nascence, and the Court is aware of no Montana case interpreting the clause. Indeed, before and after its addition, the law surrounding the Statute focuses on the timing, form, and effect of a condemnor's final written offer.

395 U.S. 486, 496 (1969). Mootness is "standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (internal quotation marks omitted). Mootness is jurisdictional; "federal courts have no jurisdiction to hear a case that is moot, that is, where no actual live controversy exists." *Id.*

The Court dismissed the federal case with prejudice because the state court proceedings had rendered it moot.[10] (Docs. 289; 294.) No actual live controversy existed after the state case concluded, and this Court no longer enjoyed jurisdiction. No judgment was entered in favor of either party, and nothing in Defendants' unopposed motion to dismiss, nor in the Court's subsequent order, spoke to the condemnation action's propriety—or purported lack thereof. So, the Court must determine if its order dismissing for mootness means that it did "not allow[]" condemnation within the meaning of the Statute.

Because the Montana Supreme Court has not yet interpreted the clause at issue here, *see supra* note 9, the Court looks first to the Statute's origin in eminent domain law for direction. "Eminent domain is the right of the state to take private property for public use," Mont. Code Ann. § 70–30–101, and the Montana

---

[10] Specifically, Defendants state that "[t]he resolution of the parallel state court proceedings resolved all pending issues in the present matter." (Doc. 289.)

legislature "further has endowed private individuals with eminent domain power for specific activities that the legislature has deemed public uses," *McEwen v. MCR, LLC*, 291 P.3d 1253, 1259 (Mont. 2012) (citing Mont. Code Ann. § 70–1– 205). Interpreting the grant of eminent domain power, Montana courts "look to the plain language set forth by the legislature" and "interpret the statute to avoid absurd results." *Id.*

Eminent domain is a "constitutionally grounded" power, derived from "the power of sovereignty." *Mont. Talc Co. v Cyprus Mines Corp.*, 748 P.2d 444, 450 (Mont. 1987). In view of the Statute's constitutional roots, Montana courts read it together with Article II, § 29 of the Montana Constitution, which provides:

> Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner. *In the event of litigation, just compensation shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails.*

*City of Missoula v. Mountain Water Co.*, 427 P.3d 1018, 1020 (Mont. 2018) (quoting Mont. Const. art. II, § 29) (emphasis added). Interpreting the constitutional provision shortly after its adoption, the Montana Supreme Court noted that "[t]he proceedings at the Constitutional Convention make it abundantly clear that it intended by Article II, Section 29 to make the landowner whole in eminent domain proceedings . . . where the landowner prevailed." *State of Mont. v. Olsen*, 531 P.2d 1330, 1335 (Mont. 1975). Reading the Statute and Article II,

§ 29 together, the Court summarized that, "[w]hether we look at the [S]tatute or the constitutional provision, no simpler statement of the condemnee's right to litigation expenses can be made than: if he prevails in litigation, he is entitled to recover his expenses." *Bozeman Parking Comm'n v. First Trust Co. of Mont.*, 619 P.2d 168, 171–72 (Mont. 1980). And for purposes of timing, the condemnee's right "does not vest when the suit is filed, but vests only when the private property owner prevails." *State of Mont. v. Donnes*, 609 P.2d 1213, 1216 (Mont. 1980).

The Court next turns to Montana's broader "prevailing party" jurisprudence for guidance. As a general matter, a party is "not entitled to a judgment for attorney fees without a final determination of the underlying controversy in [its] favor." *Dreyer v. Bd. of Trs. of Mid-Rivers Tel. Co-op., Inc.*, 630 P.2d 226, 228 (Mont. 1981). Put another way, the "prevailing party is the one who has an *affirmative* judgment rendered in his favor at the conclusion of the entire case." *Avanta Fed. Credit Union v. Shupak*, 223 P.3d 863, 874 (Mont. 2009) (emphasis added). And, where a case is mooted such that a ruling on the merits is precluded, Montana looks beyond the technical and examines whether a party prevailed "in substance, albeit without court intervention." *See Citizens for Balanced Use v. Mont. FW&P Comm'n*, 331 P.3d 844, 847 (Mont. 2014). In other words, a court asks whether a party "obtained the relief it sought to procure through litigation." *Id.* at 848.

Considering the Montana Supreme Court's statutory and constitutional interpretive guidance together with Montana's general "prevailing party" rules, the Court cannot conclude that Defendants prevailed in this case. First, the Court looks to the Statute's plain language—which asks whether, by way of its dismissal order, the "court . . . allow[ed] condemnation." Mont. Code. Ann. § 70–30–305(2). While this case certainly did not terminate with condemnation of the Subject Claims, to construe the order dismissing the case with prejudice on jurisdictional grounds as the Court "not allowing condemnation" stretches the Statute's language. Defendants urge the Court to read its order, issued upon an *unopposed* motion to dismiss for mootness, as an affirmative judgment on the merits of condemnation in their favor. The Court cannot read the Statute this broadly. The dismissal order did not disallow condemnation; it simply reflected the parties' mutual understanding that the condemnation action was rendered moot by the parallel proceedings, leaving nothing to be resolved in the federal forum and stripping this Court of jurisdiction.

Next, the constitutional guarantee provided under Article II, § 29 is inapplicable to Defendants. The Montana Constitution ensures that the prevailing private property *owner* is made whole through the award of litigation expenses. But here, Defendants do not own any interest in the Subject Claims they sought to protect from condemnation. Specifically, and as the Montana Supreme Court

- 21 -

ultimately ruled in 2019, "[b]ecause there were no valuable mineral deposits on the Subject Claims, [Defendants] did not possess valid unpatented mining claims." *Mines Mgmt., Inc.*, 453 P.3d at 377–78.  In other words, providing Defendants their litigation expenses for protecting property they never owned would attempt to "make whole" a party whose interests were not diminished in the first place.

Furthermore, whatever right to litigation expenses Defendants argue accrued to them as condemnees when Montanore "improper[ly]" filed suit (*see, e.g.* Doc. 291 at 7) is of no import.  Defendants' right to expenses did "not vest when the suit [was] filed, but vests only when [and if] the private property owner prevails." *See Donnes*, 609 P.2d at 1216.  The focus here is not the wisdom of Montanore's condemnation complaint, but whether Defendants—as the private property owner—ultimately prevailed.

And under Montana's general rules governing whether a party "prevailed," Defendants did not.  Again, the Court did not reach a final determination of the controversy in either party's favor. *See Dreyer*, 630 P.2d at 228.  To characterize the Court's dismissal for mootness as an "affirmative judgment" in Defendants' favor strains reason. *See Avanta Fed. Credit Union*, 223 P.3d at 874.

Moreover, because the condemnation suit was dismissed for mootness, the Court looks beyond the technical and asks whether Defendants prevailed "in substance, albeit without court intervention." *Citizens for Balanced Use*, 331 P.3d

at 847.  However, examining the procedural history here, the Court cannot say that Defendants "obtained the relief [they] sought to procure through litigation."  *See id.* at 848.

In the state action, Montanore sought access to the Montanore Project by challenging the validity of Defendants' purported interest in the Subject Claims. *Mines Mgmt., Inc.*, 453 P.3d at 373.  In addition to seeking a declaration of validity and superiority, Defendants countersued Montanore alleging that it trespassed across the Subject Claims. *Id.* at 375.  While Defendants obtained interim success at summary judgment and trial, the Montana Supreme Court ultimately ruled for Montanore and against Defendants on all counts. *Id.* at 378.  The federal action, where Montanore sought to obtain the access blocked by the state court's summary judgment ruling, eventually terminated with the parties exactly where the Montana Supreme Court left them: Montanore with access to the Montanore Project, and Defendants without a valid property interest at stake.  Under these circumstances, Defendants cannot reasonably argue that they obtained the relief they sought to procure through this litigation.

In sum, walking through the unique procedural history of this case leads to two conclusions.  First, Defendants achieved interim victories in both the state and federal forums.  Second, to identify Defendants as the "prevailing party" based on those temporary successes would, in this case, lead to the "absurd result"

Montana's eminent domain law directs courts to avoid.  *See McEwen*, 291 P.3d at 1259.

**ORDER**

For the foregoing reasons, IT IS ORDERED that Defendants' motion (Doc. 290) is DENIED.

DATED this 1st day of July, 2020.

Dana L. Christensen, District Judge
United States District Court